UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FRIENDS OF ANIMALS, INC., ET AL., : | |
|     Plaintiffs, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 3:06-cv-01708 (VLB) |
| CITY OF BRIDGEPORT POLICE : | |
| DEPARTMENT ET AL., : | |
|     Defendants. : | October 25, 2007 |

**MEMORANDUM OF DECISION DENYING PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION [Docs. #2, 53]**

The plaintiffs, Friends of Animals, Inc., and Lisa Zalaski, filed this action against the defendants, the City of Bridgeport Police Department and Deputy Chief James J. Honis, on October 27, 2006. The plaintiffs alleged violations of their rights to free speech and assembly on the plaza in front of the Arena at Harbor Yard ("arena"), an approximately 10,000-seat facility. The plaintiffs alleged that they were deprived of their rights when they engaged in demonstrations on the plaza prior to performances of the Ringling Brothers & Barnum and Bailey Circus ("circus"). [Doc. #1]

The plaintiffs also sought a temporary restraining order and preliminary injunction against the defendants. [Doc. #2] After a hearing on short notice on October 27, 2006, United States District Judge Janet C. Hall granted a temporary restraining order that permitted the plaintiffs to demonstrate against the circus on the plaza as long as they stayed at least 40 feet away from the two main

entrances to the arena.  [Doc. #8]  Judge Hall has indicated that her order applied only to the October 2006 circus performances at the arena.  [Doc. #57]

The plaintiffs have renewed their motion for temporary restraining order and preliminary injunction now that the circus has returned to the arena for its October 2007 performances.  [Doc. #53]  On October 24, 2007, the Court held a hearing on the motion.  The plaintiffs presented the testimony of Karen Laski, William Mannetti, and Lisa Zalaski, all of whom have participated in demonstrations against the circus at the arena in prior years.  The defendants presented the testimony of Lynn Carlotto, general manager of the arena; Thomas Saunders, event manager at the arena; Bridgeport Police Captain Brian McCarthy; and Charles Read, director of security for the circus.  The parties also provided the Court with several exhibits, including maps and diagrams of the arena property.

The arena property is owned by the City of Bridgeport, but it is privately managed by a company known as Centerplate, which has an agreement with the city to operate the facility.  The defendants assert that the property does not constitute a public forum for expressive conduct even though it is publicly owned.  Nonetheless, the defendants have allowed the plaintiffs to demonstrate on the plaza in prior years.  At the present time, the defendants have requested that the plaintiffs demonstrate on the plaza no closer than 80 feet from the two main entrances to the arena.  According to the defendants, the 80-foot restriction is necessary for security.  Only ticketed patrons are allowed to cross the 80-foot

line, where they queue up and wait to pass through a security screening before entering the arena.

In considering whether the defendants' request comports with the plaintiffs' rights to free speech and assembly, the Court first examines the nature of the forum in which the plaintiffs seek to demonstrate. In <u>Perry Education Assn. v. Perry Local Educators' Assn.</u>, 460 U.S. 37 (1983), the United States Supreme Court identified three types of forums—public, limited public, and nonpublic. "In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. . . . In these quintessential public forums, the government may not prohibit all communicative activity. For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. . . . The state may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. . . .

"A second category consists of public property which the state has opened for use by the public as a place for expressive activity. The Constitution forbids a

state to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place. . . . Although a state is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum. Reasonable time, place and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest. . . .

"Public property which is not by tradition or designation a forum for public communication is governed by different standards. We have recognized that the First Amendment does not guarantee access to property simply because it is owned or controlled by the government. . . . In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Id. at 45-46.

In the present case, the plaza in front of the arena is owned by the City of Bridgeport but is managed by a private company. On the basis of the evidence presented by the parties, the Court finds that the plaza, which has been in existence only since 2001, has not been "devoted to assembly and debate." Id. at 45. The evidence indicates that the plaza is used primarily by patrons of the arena for the purpose of entering and exiting the facility before and after performances inside. In other words, people ordinarily would not visit the plaza

unless they intended to enter the arena to view a performance inside. The plaza is consequently not a public forum.

It is a closer question whether the plaza is a limited public forum that has been "opened for use by the public as a place for expressive activity." Id. Since the arena opened in 2001, the city and the arena management have allowed the plaintiffs to demonstrate on the plaza. Until the parties have an opportunity to file dispositive motions in this case, the Court reserves final determination of whether that permissive use of the plaza renders it a limited public forum. For purposes of the present motion for temporary restraining order and preliminary injunction, however, the Court assumes that the plaza is a limited public forum. That assumption leads the Court to apply the more stringent test to the defendants' proposed regulation of the plaintiffs' activities. In a limited public forum, the proposed regulation must be "content-neutral . . . narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Id. By contrast, under the less stringent test that applies to a nonpublic forum, the regulation must be "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Id. at 46.

The Court concludes that the 80-foot restriction satisfies the test for a limited public forum. The restriction is content neutral because it applies to all demonstrators at the circus regardless of subject matter and viewpoint. The restriction serves a significant government interest, namely, security and orderly

crowd movement, and the restriction is narrowly tailored to serve that interest because it does not burden substantially more speech than is necessary. The plaza extends at least 120 feet from the arena, and, according to the defendants' exhibit 6, which is a diagram of the property, the part of the plaza leading toward the adjacent baseball field extends more than 200 feet from the arena. Furthermore, the plaza borders a large lawn. According to the testimony of Lynn Carlotto, which the Court finds credible, the lines of patrons waiting to enter the arena often extend onto the lawn. The Court also finds the testimony of Thomas Saunders credible; he testified that patrons approach the arena from various parking lots more than 80 feet from the arena's entrance. Finally, the defendants' exhibit 1, which is a DVD of a portion of the demonstration in 2001, includes images of demonstrators standing more than 80 feet away from the arena, and those demonstrators could still be seen and heard by patrons heading to the arena. The Court consequently concludes that the 80-foot restriction leaves an ample alternative channel of communication available to the plaintiffs. The plaintiffs are free to assemble and speak to patrons on the plaza before patrons enter the 80-foot zone for ticket holders only.

The plaintiffs' motion for temporary restraining order and preliminary injunction is DENIED. The defendants may prohibit the plaintiffs from demonstrating closer than 80 feet from the two main entrances to the arena. However, the Court notes that the parties may choose to continue with the compromise arrangement they reached at the end of the hearing on October 24,

6

2007. That compromise consists of a boundary line drawn on the defendants'
exhibit 6, which in some places comes closer to the arena than 80 feet.

                                        IT IS SO ORDERED.

                                        /s/
                                   **Vanessa L. Bryant**
                                   **United States District Judge**

Dated at Hartford, Connecticut: October 25, 2007.